806 So.2d 607 (2002)
DEPARTMENT OF REVENUE, on behalf of Denise KING, Appellant,
v.
Ervin BLOCKER, Appellee.
No. 4D01-1102.
District Court of Appeal of Florida, Fourth District.
February 6, 2002.
*608 Robert A. Butterworth, Attorney General, and Jon J. Johnson, Assistant Attorney General, Tampa, for appellant.
No appearance for appellee.
FARMER, J.
The Department of Revenue (DOR) appeals the trial court's orders vacating a Judgment of Paternity and denying relief from such order. The DOR argues that: (1) the trial court improperly vacated an order of paternity without notice to DOR of the issues to be determined; (2) the trial court erroneously vacated the paternity order; (3) genetic testing should not have been ordered; and (4) the trial court should not have vacated child support arrearages. On all four issues, this Court agrees. Accordingly, we reverse.
In September 1997, a child was born to Denise King. In November 1998, DOR and King filed a petition to establish paternity *609 and award child support against Ervin Blocker. Initial process was delivered to Blocker's sister. Blocker did not file a response, and DOR filed a motion for default in March of 1999. The court set an uncontested final hearing on paternity and entered final judgment of paternity, child support, retroactive child support, medical coverage and costs in April 1999. The default was entered on the basis of a paternity affidavit of King.
Due to Blocker's non-payment of the ordered support, in January 2000, DOR filed a motion for contempt and request to produce. At the hearing, Blocker was asked whether he had been served at his fiancée's house, and he responded, "[c]ould have been." He further admitted, "[t]hey have been sending mail to my fiancée." His only concern at the hearing was "I don't really know if this is my child."
Blocker failed to appear at the next hearing or pay the required purge amount; therefore, the hearing officer recommended, and the court ordered, a writ of bodily attachment.
In February 2001, while Blocker was in custody, the court vacated the above order for "for lack of sufficient service." The court also ordered DNA testing and vacated the child support arrearages previously awarded. The DOR subsequently filed for relief from this order which was denied. This appeal soon followed.
The first issue is whether the trial court improperly vacated an order of paternity without notice to DOR of the issues to be determined. Blocker did not file anything requesting that the paternity order be vacated. DOR did not have notice of the issues. Because the issue of paternity exceeded the scope of the contempt proceeding, the trial court erred in vacating the order without notice that the issues would be heard.
The second issue is whether the trial court even had jurisdiction to vacate a paternity order entered almost two years ago. This Court has held that "`[a]bsent a showing of fraud upon the court, a paternity order is res judicata on the issue of paternity and re-litigation of paternity issues would be unauthorized in connection with a subsequently-filed motion for contempt for failure to pay court-ordered child support.'" Dep't of Revenue v. Allen, 717 So.2d 130 (Fla. 4th DCA 1998) (quoting Dep't of Revenue v. Goulbourne, 648 So.2d 856, 857 (Fla. 4th DCA 1995)); see also DeVaughn v. Dep't of Revenue, 691 So.2d 11, 12 (Fla. 4th DCA 1997) (holding that "[a]bsent fraud on the court, the trial court did not have jurisdiction to set aside the 1982 judgment of paternity more than one year after its rendition").
In this case, paternity was established by court order in April of 1999. The order was vacated in February 2001 due to "lack of sufficient service of process." No transcript of the contempt hearing exists. We do have a transcript of Blocker's first appearance at a hearing. At this hearing, he admitted that he "[c]ould have been" served, as well as admitting to receiving documents in the mail. When told he had to pay support, he merely stated, "[c]an you give me any later date than that to give me time to come up with the money?" His only concern seemed to be that King's child may not be his child; his concern was not insufficient service of process. At no time did Blocker allege that he did not actually receive process or that service was somehow defective. Not until he was arrested did such an issue seem to come to the court's attention.
Because Blocker made a general appearance, the defense of insufficient service of process had been waived. See MacDougall v. Kutina, 798 So.2d 30 (Fla. 4th DCA 2001) (holding that former husband waived *610 any defects in service of process by appearing at the first contempt proceeding). Service of process was not an adequate defense to the second contempt proceeding when Blocker had already waived any jurisdictional defect by participating in the first contempt proceeding.
Though no transcript of the contempt proceeding exists, under no set of facts could the trial court have vacated the order on the basis of insufficient service of process. Furthermore, Blocker did not move to vacate the judgment of paternity within a year and there was no allegation of fraud upon the court. The trial court erred.
The next issue is whether DNA testing was properly ordered by the trial court. As discussed above, the paternity order was res judicata. A compulsory physical examination requires a showing that the condition is in controversy as well as good cause. Allen, 717 So.2d at 131; see also Fla. R. Civ. Pro. 1.360(a)(1) & (2). The order requiring DNA testing failed to comport with Rule 1.360 because the only matter pending before the court was the contempt proceeding. See Goulbourne, 648 So.2d at 857-58. Accordingly, the trial court abused its discretion in ordering such testing because the issue was res judicata. Arison v. Offer, 669 So.2d 1128, 1129 (Fla. 4th DCA 1996).
The last issue is whether the trial court abused its discretion in vacating child support arrearages. Child support payments that remain unpaid are a vested right of the child, and "they can not be cancelled or reduced retrospectively absent extraordinary or compelling circumstances such as waiver, laches, estoppel, or reprehensible conduct [on the part of the custodial parent]." Dep't of Revenue v. Strickler, III, 702 So.2d 277, 278 (Fla. 1st DCA 1997). Also, this Court has held that "[u]npaid child support accruing from an order requiring payment, an arrearage, is a vested right, not subject to modification." Milopoulos v. Milopoulos, 691 So.2d 1199, 1200 (Fla. 4th DCA 1997). There were no compelling circumstances present so that the trial court would have been justified in vacating the right to vested arrearages.
REVERSED.
STONE and HAZOURI, JJ., concur.