# Third District Court of Appeal

**State of Florida**

Opinion filed December 5, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1902
Lower Tribunal Nos. 16-24779 & 18-9851

_____


**Danay Puebla Llanos and Alan Llanos,**
Petitioners,

vs.

**Karel Santos Huerta,**
Respondent.


A Writ of Certiorari to the Circuit Court for Miami-Dade County, Joseph I. Davis, Jr., Judge.

Feiler & Leach, P.L., and Martin E. Leach, for petitioners.

Gastesi & Associates, P.A., and Raul Gastesi, Jr., for respondent.

Before LOGUE, SCALES and LUCK, JJ.

LOGUE, J.

Danay Puebla Llanos and Alan Llanos, a married couple, petition this Court for a writ of certiorari quashing two identical orders requiring them to submit their minor child to a paternity test to determine whether Respondent, Karel Santos

Huerta, is the biological father. For the reasons below, we grant the petition and quash the orders.

Background

Mr. Llanos and Ms. Llanos separately filed suit for protection from stalking against Mr. Santos pursuant to section 741.30, Florida Statutes. After 16 years of marriage, Mr. and Ms. Llanos separated in 2011. Subsequently, Ms. Llanos and Mr. Santos entered into a relationship.[1] In early 2012, however, Mr. and Ms. Llanos reconciled and the relationship between Ms. Llanos and Mr. Santos ended. Meanwhile, Ms. Llanos conceived and gave birth to the child at issue. In 2013, Mr. Santos filed a petition asserting he was the father of the child, but that petition was dismissed with prejudice. In his brief in this case, Mr. Santos acknowledges that the child is the legal child of Mr. Llanos and he does not "seek to alter or re-litigate that determination."

In 2016, Ms. Llanos filed a petition against Mr. Santos for an injunction to stop Santos from stalking her. See Llanos v. Huerta, Case No. 2016-024779-FC-04 (Fla. 11th Cir. Ct. 2016). Mr. Santos ultimately stipulated to entry of a permanent injunction ordering him to refrain from stalking Ms. Llanos. Mr. Santos has since moved to set aside the permanent injunction. Nothing in his motion to set aside has placed the paternity of the child in controversy.

---

[1] The record is not clear as to the exact time.

Subsequently, in 2018, Mr. Llanos filed a separate petition against Mr. Santos to obtain an injunction against stalking him. See Llanos v. Heurta, Case No. 2018-009851-FC-04 (Fla. 11th Cir. Ct. 2018). Among other things, Mr. Llanos alleged that Mr. Santos (1) stalked him and his family; (2) wrote threatening letters to Mr. Llanos, his eldest daughter, and his siblings that contained photographs of Ms. Llanos which a reasonable person would expect to remain private; and (3) threatened to send those photos and other private video footage to Mr. Llanos' employer and neighbors. Nothing in the petition or in Mr. Santos' response below expressly placed the paternity of the child in controversy.

Mr. Santos' motion to set aside Ms. Llanos' permanent injunction and Mr. Llanos' petition for an injunction against Mr. Santos were consolidated and came for hearing on August 22, 2018. Before any evidence was heard, the trial court sua sponte raised questions about the biological paternity of the child. The trial court explained: "my view of the world is that if Mr. Santos is or has reasonable cause to believe that he's the biological father, it may impact his alleged conduct" and therefore, biological paternity may be relevant to the statutory "definition of harass" which considers whether the harassing conduct "serve[d] no legitimate purpose." In response, Mr. Santos made an ore tenus motion to compel a paternity test. The trial court granted the motion, entered the two orders at issue, and

continued both hearings. Mr. and Ms. Llanos timely filed this petition for writ of certiorari.

Analysis

To obtain a writ of certiorari, "a party must demonstrate that the contested order constitutes (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on post-judgment appeal." Damsky v. Univ. of Miami, 152 So. 3d 789, 792 (Fla. 3d DCA 2014). The issue in this case is whether orders compelling a married couple to submit their child to a paternity test in these circumstances warrants a writ of certiorari. We hold that it does.

Under the existing case law, a court must conduct a three-prong test prior to ordering a party to submit to genetic testing. As this Court has previously explained, "no party to any family law proceeding is entitled to an order requiring another party to submit to genetic testing unless (1) the proceedings place paternity 'in controversy' and (2) 'good cause' exists for the testing." Flores v. Sanchez, 137 So. 3d 1104, 1107 (Fla. 3d DCA 2014) (quoting Dep't of Revenue ex rel. Chambers v. Travis, 971 So. 2d 157, 162 (Fla. 1st DCA 2007)); see also Dep't of Revenue ex rel. Freckleton v. Goulbourne, 648 So. 2d 856, 857–58 (Fla. 4th DCA 1995); Dep't of Revenue ex rel. Carnley v. Lynch, 53 So. 3d 1154, 1157 (Fla. 1st DCA 2011).

4

In addition, Florida law has a strong public policy against genetic testing to establish biological paternity where such testing could overcome the presumption of legal paternity and legitimacy; therefore, prior to ordering paternity testing, the trial court must also determine that the testing would be in the child's best interest. See Dep't of Health and Rehab. Servs. v. Privette, 617 So. 2d 305, 307-08 (Fla. 1993); see also Flores, 137 So. 3d at 1108-09 (citing R.S.R. v. A.K., 801 So. 2d 325, 325 (Fla. 1st DCA 2001) (quashing order compelling testing where trial court failed to consider testing was in child's best interests); Dep't of Revenue ex rel. T.E.P. v. Price, 958 So. 2d 1045, 1046 (Fla. 2d DCA 2007); Hebner v. Barry, 834 So. 2d 305, 306–07 (Fla. 4th DCA 2003); Van Weelde v. Van Weelde, 110 So. 3d 918, 921 (Fla. 2d DCA 2013).

Here, the trial court departed from the essential requirements of the law when it entered the underlying orders. In these circumstances, paternity was not in controversy and proof that Santos or some third party was the biological father would not provide a legitimate purpose for Mr. Santos' alleged conduct of stalking the family, writing threatening letters that contained personal photographs of Ms. Llanos to her husband and others, threatening to send those photos and other private video footage to Mr. Llanos' employer and neighbors, or violating an existing anti-stalking injunction. Under the same reasoning, the paternity of the

child is not implicated in Mr. Santos' motion to set aside the agreed permanent anti-stalking injunction.

Good cause cannot be found, either. Paternity was previously raised in a different proceeding and Mr. Llanos was adjudicated the legal father of the minor child. That adjudication was not appealed, is final, and <u>res judicata</u> in the absence of a showing of fraud upon the court, which has not been raised or established in this case. <u>See</u> <u>Goulbourne</u>, 648 So. 2d at 858 (quashing trial court order requiring paternity testing because of prior adjudication: "Absent a showing of fraud upon the court, a paternity order is <u>res judicata</u> on the issue of paternity and re-litigation of paternity issues would be unauthorized . . . .").

In these circumstances, the trial court departed from the essential requirements of the law resulting in material injury for which there is no adequate remedy upon post-judgment appeal when it compelled Mr. and Ms. Llanos to submit their minor child to paternity testing.

Petition granted; Orders quashed.